**James E. DAVIS, Plaintiff,**

v.

**AMERICAN SOCIETY OF CIVIL ENGINEERS, et al., Defendants.**

**No. 1:03CV1469 (GBL).**

United States District Court, E.D. Virginia. Alexandria Division.

Aug. 9, 2004.

Barry Coburn, Esquire, David Schertler, Esquire, Coburn & Schertler, Washington, DC, for Plaintiff's Counsel.

Thomas L. McCally, Esquire, Tina M. Maiolo, Esquire, Carr Maloney, P.C., Washington, DC, for Defendant's Counsel.

### MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment. Defendants move this Court to grant summary judgment on three of Plaintiff's claims: Count I: Discriminatory Termination; Count III: Harassment on the Basis of Race; and Count V: Breach of Contract. Seven issues exist before the Court. First, whether Plaintiff's discriminatory termination claim is barred by the statute of limitations. Second, assuming *arguendo*, that Plaintiff's discriminatory termination claim is within the statute of limitations, whether the American Society of Civil Engineers ("ASCE"), through the doctrine of respondeat superior, is liable for the actions of its agents under Plaintiff's discriminatory termination claim. Third, assuming *arguendo*, that Plaintiff's discriminatory termination claim was within the statute of limitations, whether Plaintiff fails to prove that ASCE and Defendant Turner discriminatorily terminated him, in violation of 42 U.S.C. § 1981. Fourth, whether Plaintiff's racial harassment claim in violation of 42 U.S.C. § 1981 is barred by the statute of limitations. Fifth, whether Plaintiff sufficiently proves that his alleged harassment was based upon his race and was sufficiently severe and pervasive to alter the conditions of his employment. Sixth, whether Defendants breached Plaintiff's employment contract by failing to provide Plaintiff with severance payments. Seventh, whether the individual Defendants are immune from the lawsuit.

Because the Defendants' Motion for Summary Judgment demonstrates that Plaintiff does not possess genuine issues of material fact for trial, the Court grants Defendants' motion. Specifically, the Court grants Defendants' motion for three reasons. First, while Plaintiff's discriminatory termination claim does fall within the statute of limitations, Plaintiff has not shown any direct evidence that ASCE or its agents, including Defendant Turner, discriminatorily terminated Plaintiff. Plaintiff also fails to satisfy the burden shifting test of *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973), because Plaintiff does not show that Defendants' nondiscriminatory reason for not renewing his employment contract was a pretext for discrimination.

Second, while Plaintiff's racial harassment claim does fall within the statute of limitations, Plaintiff fails to present evidence that either ASCE as an entity, and more specifically, the individual Defendants, harassed Plaintiff on the basis of his race. Finally, Defendants did not breach the terms of Plaintiff's employment agreement because he was not terminated without cause. Defendants' simply chose not to renew Plaintiff's contract. Defendants decision not to renew Plaintiff's contract may have been political, but it was not discriminatory.

### Background

This case arises out of an employment relationship between Plaintiff and Defendants. Plaintiff James E. Davis filed this lawsuit against four defendants: ASCE, and three of its former presidents—Daniel S. Turner, Robert W. Bein, and H. Gerald Schwartz, Jr. Plaintiff worked for Defendant ASCE from 1989 through 2002. ASCE is a New York incorporated nonprofit that has its principal place of business in Reston, Virginia.

Defendants employed Plaintiff in March 1989 as Assistant Executive Director and Chief Operating Officer. In 1994, Plaintiff was selected as ASCE's Executive Director and Chief Executive Officer. Plaintiff's tenure as CEO of ASCE was governed by an employment contract. In July 1997, ASCE's Executive Committee voted to extend Plaintiff's employment contract until October 31, 2000. ASCE's Executive Committee also modified the terms of Plaintiff's existing employment contract so that it could renew Plaintiff's position for two-year periods after October 31, 2000 (the contract previously was eligible for renewal annually). On August 26, 1997, Plaintiff and Defendants executed an addendum to the employment contract, which provided that the employment contract would renew automatically for two years unless either party notified the other on or before November 1, 1999, and every other November 1st thereafter. Neither Plaintiff nor Defendants gave the other notice of a non-renewal by November 1, 1999, and the employment contract automatically renewed through October 31, 2002.

ASCE's Executive Committee has certain oversight responsibilities for the operations of ASCE. It consists of seven members, including the Past–President, the President–Elect, and the Current President, as well as four Vice Presidents. Each year, the Executive Committee also evaluated Plaintiff's job performance.

At a meeting on April 27, 2000, the Executive Committee expressed concern to Plaintiff about the resignation of two key staff members, Tina Masters and Hank Hatch, who had complained about Plaintiff's management style. At that meeting, members of the Executive Committee also discussed Plaintiff's job performance. The Executive Committee made a decision at that meeting not to renew Plaintiff's contract, but to allow Plaintiff to finish the remainder of his term through October 31, 2002. Plaintiff was present at this meeting and inquired as to why the Executive Committee was considering not renewing his contract. Defendant Turner spoke of the resignations of the two key staff people and expressed a concern about Plaintiff's management style. Specifically, Defendant Turner stated that Plaintiff had a "gorilla management style."

The Executive Committee wrote a "notice of termination" letter, which it attempted to deliver to Plaintiff on July 1,

2000. Plaintiff refused to accept the letter at that time.

On October 18, 2000, the Board of Direction ("the Board") met. ASCE's Board of Direction is composed of 28 members, including the seven members of the Executive Committee, and serves as the ASCE Board of Directors. The Board voted in support of the Executive Committee's decision not to renew Plaintiff's employment contract.

On October 9, 2001, Plaintiff received a formal, written notice of non-renewal from President Bein confirming the October 18, 2000, Board of Direction vote. Plaintiff remained employed with ASCE through the term of his contract, which expired on October 31, 2002.

Plaintiff now sues. On Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court dismissed the following counts and claims: Count I: Conspiracy in violation of 42 U.S.C. § 1985; Count IV: Tortious Interference with Business Relations; Count VI: Tortious Interference with Contract.

Defendants seek summary judgment on the remaining claims: Count I: Discriminatory Termination in violation of 42 U.S.C. § 1981; Count III: Harassment on the basis of race in violation of 42 U.S.C. § 1981; and Count V: Breach of Contract (Against Defendant ASCE only).

## Discussion

### I. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issues of *material* facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This standard of review sets forth the procedural framework for the Court's analysis; each subsection contains the rule of law that applies to each individual claim.

### II. Analysis

#### A. Count I: Discriminatory Termination

The Court holds that Plaintiff's claim of discriminatory termination falls within the four year statute of limitations mandated by Congress in 28 U.S.C. § 1658(a). However, Plaintiff fails to establish a prima facie case of discrimination under the burden shifting scheme of *McDonnell Douglas*. Therefore, the Court GRANTS Defendants' Motion for Summary Judgment on Count I.

##### I. Statute of Limitations

■ The Court holds that pursuant to the Supreme Court's recent decision in *Jones v. R.R. Donnelley & Sons Co.*, —— U.S. ——, 124 S.Ct. 1836, —— L.Ed.2d —— (2004), Plaintiff's claim of discrimina-

tory termination in violation of 42 U.S.C. § 1981 falls within 28 U.S.C. § 1658(a)'s four year statute of limitations for actions arising under federal statutes enacted after December 1, 1990. The statute of limitations started to accrue at the time of the Board of Direction vote on Plaintiff's contract on October 18, 2000. Plaintiff filed his lawsuit on April 21, 2003.

Congress enacted 28 U.S.C. § 1658(a) on December 1, 1990. The statute provides:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a) (2004). The Supreme Court in *R.R. Donnelley & Sons Co.* concluded that a cause of action "arises under an Act of Congress enacted after December 1, 1990 ... if the plaintiff's claim against the defendant was made possible by a post–1990 enactment." 124 S.Ct. at 1845. The Court reasoned that this construction of 28 U.S.C. § 1658(a) best serves Congress' interest in alleviating the uncertainty inherent in the practice of borrowing state statutes of limitations. *Id.*

In *R.R. Donnelley & Sons Co.*, former employees of the company filed a class action suit alleging violations of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. *Id.* at 1839. Specifically, the plaintiffs alleged that they were subjected to a racially hostile work environment, given an inferior employee status, and wrongfully terminated or denied a transfer in connection with the closing of the defendant's Chicago plant. *Id.* The defendant in *R.R. Donnelley & Sons Co.*, like the defendants in this case, moved for summary judgment on the basis that the applicable two year state statute of limitations barred the plaintiffs' claims.

In its May 3, 2004, decision, the Supreme Court held that the Civil Rights Act of 1991 overturned *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (holding that "the right to make ... contracts" in § 1981 extended only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment), by "defining the key 'make and enforce contracts'" language of 42 U.S.C. § 1981 to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b) (2004). Therefore, the Court held that the plaintiffs' hostile work environment, wrongful termination, and failure-to-transfer claims were made possible by the Civil Rights Act of 1991, and thus arose under the amended provisions of 42 U.S.C. § 1981. *R.R. Donnelley & Sons Co.*, 124 S.Ct. at 1846.

The instant case fits squarely within the jurisprudence of *R.R. Donnelley & Sons Co.* Plaintiff alleges in his Amended Complaint that "42 U.S.C. § 1981, as amended, prohibits *inter alia*, discrimination on the basis of race relating to contract termination." *See* Am. Compl. at 23. A claim for discriminatory termination arising under § 1981 is not a cause of action that Plaintiff could litigate in this Court prior to the statute's 1991 amendment. *See R.R. Donnelley & Sons Co.*, 124 S.Ct. at 1846.

 The alleged discriminatory decision that is at issue in this lawsuit, i.e., the decision not to renew Plaintiff's contract, had two key time dates—the vote of the Executive Committee and the vote of the Board of Direction. The Executive Committee voted not to renew Plaintiff's contract on April 27, 2000. The critical final vote of ASCE's Board of Direction occurred on October 18, 2000. The final vote

was 15 to 10 in favor of adopting the recommendation of the Executive Committee. The Court holds that the statute of limitations started to accrue at the October 18, 2000 meeting in which Plaintiff was in attendance when the Board of Direction informed Plaintiff of its vote not to renew his contract. Therefore, pursuant to the holding in *R.R. Donnelley & Sons Co.*, the Court holds that Plaintiff's discriminatory termination claim is governed by 28 U.S.C. § 1658(a)'s four year statute of limitations. Thus, Plaintiff's discriminatory termination claim is not time barred.

### ii. Respondeat Superior and ASCE

 The Court holds that the general principle of agency applies in this case. Under the doctrine of respondeat superior, a principal can be liable for the tortious actions of its agents or servants. *See* Restatement (Second) of Agency §§ 215–216, 219 (1958); W. Prosser, Law of Torts §§ 69–70 (4th ed.1971). Defendants argue that the doctrine of respondeat superior does not automatically apply in § 1981 cases. Defendants cite *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). According to Defendants, this case holds that Plaintiff must prove an independent intent to discriminate by ASCE in order for ASCE to be liable for its own actions or the actions of any of its agents. Defendants argue that, under this interpretation of *General Building*, Plaintiff has not shown an independent intent by ASCE to discriminate, and therefore, the doctrine of respondeat superior does not apply in this case.

*General Building*, however, does not stand for the proposition that the doctrine of respondeat superior does not apply in § 1981 cases. Rather, the *General Building* Court held that vicarious liability via the doctrine of respondeat superior did not apply under the specific facts of that case. The parties in *General Building* were a union hiring hall and an apprenticeship program. The Court stated:

> We have ... difficulty in accepting the application of traditional respondeat superior doctrine to the class of contractor employers. In the run of cases, the relationship between an employer and the union that represents its employees simply cannot be accurately characterized as one between principal and agent or master and servant. Indeed such a conception is alien to the fundamental assumptions upon which the federal labor laws are structured.

*Id.* at 393, 102 S.Ct. 3141.

This distinction is not present in the instant case before the Court. This case does not involve contractor employees, unions, or apprenticeship parties. There is no question that under the general application of the doctrine of respondeat superior, a principal can be liable for the tortious actions of its agent or servant. *See* Restatement (Second) of Agency §§ 215–216, 219 (1958); W. Prosser, Law of Torts §§ 69–70 (4th Ed.1971). There is no question here that the Executive Committee and ASCE's Board of Direction acted as agents of ASCE. Under the doctrine of respondeat superior, ASCE is liable for the actions of its agents. Although the Court finds that ASCE is liable for the actions of its agents, the Court fails to find any genuine issue of material fact affirming liability of ASCE to Plaintiff.

### iii. Proof of ASCE's and Defendant Turner's Discriminatory Termination

 Although the Court has held that Plaintiff's claim of discriminatory termination is not time barred, the Court finds that Plaintiff has failed to prove his allegations of discriminatory termination under 42 U.S.C. § 1981 by either direct evidence or the burden shifting framework of *McDonnell Douglas*. A plaintiff may seek

to prove a § 1981 cause of action either by direct evidence or by the judicially created burden-shifting proof scheme in *McDonnell Douglas*. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir.2000).

■ To prove discriminatory termination by direct evidence, the plaintiff must show that (1) he is a member of a racial minority; (2) the defendant intended to discriminate against him on the basis of race; and (3) the discrimination concerned a privileged protected under § 1981. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir.2001).

■ Under the burden shifting framework of *McDonnell Douglas*, Plaintiff must first establish a prima facie case of discrimination. *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir.2001). In order to prove a prima facie case, Plaintiff must show that (1) he belongs to a racial minority; (2) he was qualified for the job of ASCE Executive Director; (3) despite his qualifications and performance, he was terminated; and (4) after his termination, Defendants' retained someone in an unprotected class. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The Defendants may respond to Plaintiff's showing of a prima facie case by producing evidence that they acted with a legitimate, nondiscriminatory reason for their treatment of Plaintiff. *Id.* Finally, Plaintiff may adduce evidence showing that the Defendants' proffered reason was mere pretext and that race based discrimination was the real reason for the Defendants' less than favorable treatment of Plaintiff. *Id.*[1]

■ First, as to Defendant ASCE, Plaintiff fails to satisfy the direct evidence test set forth in *Morris*. Plaintiff does establish that he is a member of a racial minority. However, Plaintiff does not show by a preponderance of the evidence that ASCE intended to discriminate against him on the basis of race. Plaintiff alleges "schemes" and "hidden agendas," but shows no direct evidence of discriminatory animus by ASCE or any of its agents, particularly those on the Executive Committee or on the Board of Direction.

■ Second, Plaintiff also does not meet the burden shifting test of *McDonnell Douglas* because he fails to prove a prima face case of discrimination. Under *McDonnell Douglas*, Plaintiff does establish that (1) he belongs to a racial minority and (2) he was qualified for the job of ASCE Executive Director. However, the facts of this case do not demonstrate that Plaintiff was terminated by ASCE despite his qualifications and performance. There is no evidence that ASCE terminated Plaintiff. Plaintiff was a contractual employee. Terminating Plaintiff would mean that Plaintiff would not have completed a full term of the contract, either with or without cause. In fact, there is no dispute among the parties that Plaintiff did complete the full term of the contract. ASCE simply exercised its contractual option not to renew Plaintiff's employment contract.

■ Third, assuming, *arguendo*, that Plaintiff did meet his first burden under *McDonnell Douglas* and successfully pled a prima facie case, Plaintiff fails to satisfy his second burden of showing that ASCE's nondiscriminatory reason for not renewing Plaintiff's employment contract was merely a pretext for its discriminatory conduct.

1. Plaintiff originally filed suit for discriminatory termination against Defendants ASCE, Turner, Schwartz, and Bein. However, Plaintiff conceded in its Memorandum in Opposition to Defendants' Motion for Summary Judgment that Defendants Schwartz and Bein were not involved in the decision to terminate Plaintiff and, therefore, may not be held personally liable for that alleged discriminatory action. Thus, the Court finds that Plaintiff's claim of discriminatory termination is only alleged against Defendants ASCE and Turner.

As discussed above, after Plaintiff asserts his prima facie case, ASCE must produce evidence that its decision to not renew Plaintiff's contract arose from a legitimate, nondiscriminatory reason. The legitimate, nondiscriminatory reason ASCE asserts, on behalf of its agents, is that the organization made a legitimate managerial decision not to renew Plaintiff's employment contract because Plaintiff had an undesirable management style.

In light of ASCE's perception of Plaintiff's inadequacies as a manager, ASCE, through its Executive Committee and Board of Direction, wanted a new leader. The record shows that some of ASCE's agents did not like Plaintiff, but that reason alone is not discriminatory. Under Plaintiff's employment contract, Defendants could have picked any nondiscriminatory reason not to renew the contract—from the most odd (i.e. they did not like the way Plaintiff dressed, for instance) to the reason stated here, that Plaintiff had a difficult and ineffective management style. Managerial boards of corporations can remove leaders simply because they "don't like them." There is nothing discriminatory on its face about this. In *Mereish v. Walker*, 359 F.3d 330 (4th Cir.2004), the Fourth Circuit held that civil rights laws should not hinder nondiscriminatory corporate management decisions. That is the case here.

Plaintiff attempts to rebut ASCE's nondiscriminatory reason for not renewing Plaintiff's employment contract by alluding to "schemes" and "hidden agendas" designed by ASCE's agents to force him to leave the organization. Plaintiff submits to this Court the October 18, 2000, statements of Mr. Delon Hampton, President of the Board of Direction, to support his assertion that schemes and hidden agendas predicated the non-renewal of his employment contract.

Mr. Hampton opined that the Executive Committee made a politically based decision to oust Plaintiff from his position for two reasons. See ASCE Board of Direction Oct. 18, 2000 Meeting Tr. at 89–93.[2] First, Mr. Hampton contends that one of the members of the Executive Committee wanted Plaintiff's job for themselves. Second, Mr. Hampton asserts that a member of the Executive Committee had his own candidate for Plaintiff's position ready to take the position when the Board of Direction did not renew Plaintiff's contract. *Id.*

Although the Court finds, like Mr. Hampton, that politics were at play in the Executive Committee and Board of Direction's determination of whether to renew Plaintiff's employment contract, the politics involved, as messy and as unprofessional as they may have been, did not bear at all upon race and therefore were nondiscriminatory. Corporations are "political animals." Members of Boards all over the country, both profit and non-profit, have problems with CEO's and concoct "schemes" and "hidden agendas" to get these people out of the organization. That behavior alone is not discriminatory.

---

**2.** Mr. Hampton: "My side of [the] story is that last—whenever I came on the executive committee as president-elect—every meeting the executive committee had, we spend probably an hour or more talking about [Plaintiff], and that discussion was led by Dan Turner, supported by the executive committee. I would think of them now as the gang of four and Machiavelli. The gang of four because they decided and they told people that they had four votes on the executive committee and they didn't care what the presidents did ... Okay. There is a hidden agenda here ... Now there is nothing new in ASCE about a president wanting to get rid of an executive director. There's nothing new about that. That's happened before. But when it happened before it was done with style and it was done with class." *Id.*

Under the holding in *Mereish*, corporations and business have to have some leeway to conduct their businesses. The Court cannot become an arbiter over political nondiscriminatory personnel situations. Therefore, the Court holds that Plaintiff's allegations of political schemes and hidden agendas simply do not prove that ASCE's nondiscriminatory reason for its non-renewal of Plaintiff's contract was merely a pretext for discrimination.

■ For the same reasons Plaintiff cannot prove a § 1981 cause of action against ASCE, Plaintiff fails to meet his burdens with respect to Defendant Turner. Plaintiff does bring up two incidents that he feels indicate a racial intent by Defendant Turner. The first is a comment Defendant Turner made in 1998 that Plaintiff should "resign." Plaintiff interpreted this as a racially tinged remark. Plaintiff has produced no evidence to prove that this remark alone had any racial meaning to it. Additionally, this remark was made in 1998. Theoretically, the Court should not address it, since it is outside the scope of the four year statute of limitations and Plaintiff has not pled a continuing violation.

Second, Plaintiff argues that Defendant Turner's statement that Plaintiff had a "gorilla management style", which Turner made at the April 27, 2000, Executive Committee meeting, was racist. Plaintiff interpreted the comment to mean that Plaintiff was a "gorilla", and further took that comment to be synonymous with a racial remark.[3] The Court finds this comment to be tasteless, offensive, and most likely deriving from racist overtones. However, even assuming that Defendant Turner's comment was a racist remark, the Fourth Circuit has held that passing racial remarks do not trigger § 1981 sanctions. *See Brown v. Eckerd Drugs, Inc.*, 663 F.2d 1268, 1290 (1981).

In *Brown*, the Fourth Circuit held, in commenting on a Title VII case (which is also applicable here in a § 1981 case), that "racial comments that are merely part of casual conversation, are accidental, or are sporadic do not trigger Title VII sanctions." *Id.* The facts of *Brown* are much more severe that the conversation between Plaintiff and Defendant Turner. In *Brown*, an employee heard another employee call her the "n-word." *Id.* at 1273. It was used one time in that case. *Id.* In this case, Defendant Turner's "gorilla" comment was also used one time, at the April 27, 2000, Executive Committee meeting.

3. Mr. Delon Hampton, the President of ASCE's Board of Direction and also an African American, testified in his deposition:

Q: What do you recall—what do you recall about the [gorilla] statement?

A: I remember [Defendant Turner] making the statement, but I don't recall the timing.

Q: Do you recall—what do you recall about this statement?

A: How do you mean, what do I recall?

Q: What do you recall the statement being, to the best of your ability to remember it now?

A: He indicated something to the effect that he—that the executive director had a guerilla (sic) management style.

Q: You heard him say that?

A: Yes.

Q: When you heard him say that, did you take any offense at it?

A: Of course I took offense at it, yes.

Q: And why?

A: Because it is a stereotype for black people.

Q: Can you—I know—it may be more obvious to you than us, but can you explain that to me? How did you, as an African-American person, take that guerilla (sic) comment?

A: I did not like it very well.

Q: Did you imply—did you view it as having racial overtones?

A: It definitely has racial overtones . . .

Furthermore, even assuming that Plaintiff has shown a prima facie case against Defendant Turner for discriminatory termination, Plaintiff does not show pretext. Regardless of whether Defendant Turner had a hidden agenda or had contemplated getting rid of Plaintiff for years, his reasoning was that Plaintiff had a bad management style. This is an admissible nondiscriminatory reason for not renewing Plaintiff's employment contract.

Therefore, for the reasons stated above, Plaintiff does not have a genuine issue of material fact on Count I against Defendants ASCE and Turner. The Court GRANTS Defendants' Motion for Summary Judgment on Count I: Discriminatory Termination.

### B. Count III: Harassment on the Basis of Race in Violation of 42 U.S.C. § 1981

#### i. Statute of Limitations

▇▇▇ The Court holds that, pursuant to the Supreme Court's recent decision in *R.R. Donnelley & Sons Co.*, Plaintiff's claim of harassment on the basis of race in violation of 42 U.S.C. § 1981 is within 28 U.S.C. § 1658(a)'s four year statute of limitations for actions arising under federal statutes enacted after December 1, 1990. The federal statute of limitations began accruing in March 2000.[4] Plaintiff filed his lawsuit on April 21, 2003.

As discussed above, 28 U.S.C. § 1658(a) provides that civil actions arising under an Act of Congress enacted after December 1, 1990, have a statute of limitations of four years. See 28 U.S.C. § 1658(a). The Supreme Court concluded in *R.R. Donnelley & Sons Co.* that a cause of action "arises under an Act of Congress enacted after December 1, 1990 . . . if the plaintiff's claim against the defendant was made pos-

sible by a post–1990 enactment." *R.R. Donnelley & Sons Co.*, 124 S.Ct. at 1845.

Congress amended 42 U.S.C. § 1981 by the Civil Rights Act of 1991. The Act defined § 1981's "make and enforce contracts" language to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The Supreme Court in *R.R. Donnelley & Sons Co.* held that the 1991 amendment overturned the holding of *Patterson v. McLean Credit Union* that the "right to make contracts" only extended to the formation of a contract, not the problems that may arise later from the conditions of continuing employment. *R.R. Donnelley & Sons Co.*, 124 S.Ct. at 1846. In so holding, the Supreme Court found that the Plaintiffs' claims of a hostile work environment alleged violations of the amended statute and were therefore governed by the federal four year statute of limitations. This holding demonstrates that the Civil Rights Act of 1991 made it possible for persons to bring claims against employers for discriminatory practices occurring during the course of employment under 42 U.S.C. § 1981.

As stated above, the instant case fits squarely within the jurisprudence of *R.R. Donnelley & Sons Co.* Plaintiff argues that racial harassment was perpetrated against him beginning in or about March 2000, less than four years before Plaintiff filed this lawsuit on April 21, 2003. Because the alleged harassment occurred during the course of Plaintiff's employment, the Court holds that Plaintiff's § 1981 harassment claim is not barred by § 1658(a)'s statute of limitations.

---

4. Plaintiff asserts that material facts exist which are sufficient to show that any alleged racial harassment against Plaintiff began in or

about March 2000 and was ongoing and continuous through October 31, 2002. *See* Pl.'s Opp.'n to Def.'s Mot. for Summ. J. at 25.

### ii. Harassment on Basis of Race in Violation of 42 U.S.C. § 1981

The Court holds that Plaintiff has failed to adequately prove harassment under 42 U.S.C. § 1981, thereby failing to show a genuine issue of material fact on this claim. In order to show harassment under § 1981, a plaintiff must show that (1) he is a member of a protected racial class; (2) he was subjected to unwelcome or subjectively offense harassment; (3) the harassment was based upon his race; (4) the harassment was sufficiently severe and pervasive to alter the conditions of his employment and create an objectively hostile or abusive work environment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 61, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Plaintiff has failed to meet this test.

Plaintiff fails to demonstrate harassment under § 1981 because all of Plaintiff's claims constituted routine business dealings. While Plaintiff does show that he is a member of a protected class, Plaintiff does not satisfy the other requirements of a § 1981 harassment claim set forth in *Meritor Savings Bank* and *Harris*. The evidence Plaintiff brings forth to support his claim, particularly the decision of the Board not to reconsider its vote, the decision of the Board not to award Plaintiff a severance package, the e-mails between Plaintiff and Defendant Schwartz regarding the taking of Plaintiff's vacation, or even the meeting in which Defendants stated that if Plaintiff sought legal action they would use a "smoking gun" against him, simply do not constitute harassment because they were conducted in the course of business.

Furthermore, the Court in *Harris* articulated factors that should be considered in determining whether alleged harassment was severe or pervasive enough to bring it within the purview of Title VII (and therefore § 1981). *See Harris*, 510 U.S. at 23, 114 S.Ct. 367. These factors include the totality of the circumstances, the frequency of the discriminatory conduct, its severity, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Id.* None of these factors are present in this case. The best argument Plaintiff has is that Defendant Turner stated that he had a "gorilla management" style. As the Court explained above, it finds that this is an offensive statement, and that it may suggest racist overtones. However, Defendant Turner made this statement only once. Defendant Turner was not the sole decision maker in the decision not to renew Plaintiff's contract. The entire Board of Direction considered the issue of whether to renew Plaintiff's contract and voted 15 to 10 at its October 18, 2000, meeting not to renew. Thus, even if Defendant Turner's comment exhibited racist overtones, it was not a factor in the fifteen votes cast not to renew Plaintiff's contract. At this meeting, there was no reference to the "gorilla" statement by Defendant Turner or anyone else. The issue of Plaintiff's management style was a factor in the Board of Direction's decision. In addition, this statement alone does not come close to satisfying the severity of pervasiveness test set forth in *Harris*.

Because Plaintiff has failed to allege conduct that meets the Supreme Court's test for racial harassment in violation of 42 U.S.C. § 1981, the Court finds that no genuine issues of material fact are in dispute. Therefore, the Court GRANTS Defendants' Motion for Summary Judgment on Count III.

## C. Count V: Breach of Contract

■ The Court holds that Plaintiff's breach of contract claim fails to state a cause of action against ACSE. Plaintiff argues that there was no valid Board of Direction vote regarding the non-renewal of his employment contract, thus creating Defendant's noncompliance with the terms of the contract, which provided that Plaintiff would receive a severance package upon termination of the agreement. Specifically, Plaintiff argues that the Board's October 18, 2000, decision not to renew his contract was "procured through fraudulent misrepresentations by the Executive Committee to the Board, the purpose of which was to hide an illegal discriminatory motive." Pl. Opp. at 27. Therefore, according to Plaintiff, Defendants' actions resulted in a termination without cause in violation of his employment contract.

Defendant ACSE argues that it complied with the contractual provisions of Plaintiff's employment contract and that Plaintiff was not due a severance package. Defendant ACSE further contends that Plaintiff has not asserted that ASCE's decision not to renew violated any contractual provision or agreement.

As demonstrated by review of the four-corners of Plaintiff's agreement, either party could opt not to renew the employment agreement upon written notice no later than on or before November 1st of the year prior to expiration of the then current term. *See* Def.'s Mot. for Summ. J. Ex. C ¶ 1. "Either party's election not to renew under this paragraph shall not be deemed a termination with or without cause under Paragraph 8 of the Agreement." *Id.* Plaintiff does not dispute that if his employment agreement was not renewed, as opposed to his employment being terminated, Plaintiff is not entitled to a severance payment. *See* Def.'s Mot. for Summ. J. at Ex. D, p. 387:13–19. As

discussed above, Defendant ASCE needed no reason for non-renewal.

There is no evidence for the Court to conclude that ASCE engaged in an *ultra vires* act by its procedure in which it declined to renew Plaintiff's employment contract. The Executive Committee, as is its prerogative, voted on the renewal of Plaintiff's contract and the contract was properly voted on by the Board of Direction. The Court finds that Defendant ASCE properly, and legally, exercised its right not to renew Plaintiff's contract. This action, therefore, was not a "termination without cause," as Plaintiff contends. Because there is no genuine issue of material fact here, the Court GRANTS Defendants' Motion for Summary Judgment on Count V.

## D. Individual Defendants' Immunity

The Court holds that the individual Defendants are not automatically immune from this lawsuit. Defendants Bein, Schwartz, and Turner argue that they are automatically immune from this lawsuit under 42 U.S.C. § 14503 and Va.Code. § 13.1–870. The Defendants assert that both of these provisions grant volunteer directors and officers of tax-exempt organizations immunity from civil liability for acts taken in their capacities as officers or directors of these organizations. Plaintiff counters by noting that 42 U.S.C. § 14503(f)(1)(D) states that the exception granting volunteer directors and officers of tax-exempt organizations immunity from civil liability does not apply to "misconduct for which the defendant has been found to have violated Federal or State civil rights law."

■ While the individual Defendants' are correct in their assertion that both 42 U.S.C. § 14503 and Va.Code § 13.1–870 grant volunteer directors and officers of tax-exempt organization immunity from

civil liability for acts taken in their capacities as officers or directors of these organization, 42 U.S.C. § 14503(f)(D) states that this exception does not apply to "misconduct for which the defendant has been found to have violated a Federal or State civil rights law." Therefore, the Court must first make a determination as to whether there is a genuine issue of material fact regarding Plaintiff's civil rights claims against the individual defendants before addressing the issue of immunity. However, based on the Court's analysis, Plaintiff has failed to survive summary judgment. Therefore, this argument is moot.

### Conclusion

In conclusion, Defendants' Motion for Summary Judgment is granted because Plaintiff failed to show that a genuine issue of material fact was in dispute with regards to his discriminatory termination, racial harassment, and breach of contract claims. The evidence is clear that Defendants were unhappy with Plaintiff's management style and wanted to remove him from the organization. Plaintiff has failed to rebut this proffered nondiscriminatory reason for his termination and therefore does not establish that Defendants' assertion that Plaintiffs poor management style was the reason for the non-renewal of his contract was a pretext for discrimination.

In addition, all of the events that Plaintiff characterizes as "harassments" were routine business dealings. These particular dealings, specifically the vote of the Board and its prerogative not to reconsider its vote, were within the realms of Plaintiff's employment contract and basic business management. The comments of the individual Defendants, in particular the comment of Mr. Turner were not severe or pervasive enough to alter the conditions of Plaintiff's employment.

Finally, the Plaintiff's breach of contract claim fails to state a cause of action against ASCE. Defendants properly, and legally, exercised its right not to renew Plaintiff's contract. For the foregoing reasons, it is hereby ORDERED that Defendants' Motion for Summary Judgment is GRANTED. This case is CLOSED.

The Clerk is directed to enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

The Clerk is directed to forward a copy of this Order to counsel.